CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Martin H. DeHaan et al.

    v.

City of Charlottesville et al.

February 23, 1984

Case No. Law 2929

By JUDGE HERBERT A. PICKFORD

In pursuit of their joint interest to develop the remainder of Vinegar Hill in accord with previously determined objectives for revitalization of certain portions of the City of Charlottesville by the Charlottesville Redevelopment and Housing Authority, said Authority and City entered into a certain cooperation agreement on October 27, 1983, (Exhibit No. 62). It was a culmination of exhaustive efforts by both to induce the private development of a 4.386 acre parcel into a hotel, convention center, and garage complex. The perceived benefits to the City in tax revenues and to the downtown business community are substantial.

It has long been recognized by those involved in the planning of said project that public funds would have to be involved in the undertaking. The Authority, per Virginia Code § 36-19(f3) is empowered, as a political subdivision of the Commonwealth of Virginia, to make loans for the construction of commercial buildings. Pursuant thereto, the Authority on August 12, 1983, entered into a memorandum of agreement (Exhibit No. 54) with F. Rodney Lawler and H. Pat Wood which resulted in the Authority's executing a ground lease to Charlottesville Properties, Ltd., assignee of

Lawler and Wood. In addition to the lease arrangement, said agreement obligated the Authority to make a loan of $9.5 million to Charlottesville Properties Ltd. The total cost of the project is estimated to be $23.9 million, of which the developer will contribute $2 million. Said developer will also invest the $9.5 million it borrows from the Authority plus an additional $12.4 million it is borrowing from United Virginia Bank. Charlottesville Properties, Ltd. will own the leasehold and the improvements for the duration of the lease which calls for a term of forty-nine years with five renewal options of ten years each (see Exhibit No. 54).

In extending its loan commitment to Charlottesville Properties, Ltd. by letter of November 16, 1983, (Exhibit No. 71), United Virginia Bank requires as security a first lien deed of trust on the entire project including the fee interest of the Authority and its interest in the ground lease. It also requires the developer to obtain secondary financing from the Authority in the amount of $9.5 million.

The City, in paragraph 6 of its aforementioned cooperation agreement with the Authority, agreed to give $9.5 million to the Authority for development of the project. Virginia Code § 36-7 permits a city to lend or donate money to a housing authority to enable or assist it in carrying out its purposes. That statute also authorizes a city to issue bonds to provide funds for such an appropriation. By ordinance of October 27, 1983, (Exhibit No. 61), Charlottesville's city council authorized the issuance of $9.5 million in general obligation bonds for the purpose of appropriating the proceeds thereof to the Authority. Plaintiffs, in Count I of their amended motion for judgment, challenge the constitutionality of this action. Their principal reliance is upon the case of Button v. Day, 208 Va. 494 (1968). Defendants contend, however, that the 1971 Virginia Constitution "obliterated" the authority of that case. In it the Virginia Supreme Court had invalidated a state law as violative of the "credit clause" of § 185 of the then existing Constitution. Following said decision, the "credit clause"

was revised to its present form as it now appears in Article X, as Section 10 of the Virginia Constitution.

Professor A. E. Dick Howard in his Commentaries on the Constitution of Virginia, Vol. II, at page 1129 (1974), said that as a result of decided cases, Section 10's "prohibitions mean a great deal less than one might suppose on simply reading them." He further states that the precedent of Button v. Day, supra, was overturned by the subsequent revision to the credit clause. However, at page 1132, he notes that a public purpose may not necessarily save a measure challenged under the "credit clause."

In Almond v. Day, 197 Va. 782 at page 790, the Virginia Supreme Court stated that whether or not a transaction contravenes the "credit clause. . . depends upon its animating purpose and the object that it is designed to accomplish." Stated another way, the Court in Button v. Day, supra, at pages 503 and 504, said it must look to "the four corners of the legislation in question" to see what is the real use to which the public funds are to be put. It held that the purpose of the legislation in the latter case was to aid private enterprise in the hope its development would help lessen the unemployment problem then existing in Virginia. In holding that the legislation in question violated the "credit clause," the Court noted a lack of public ownership of the facilities for which the public funds were to be expended.

Ten years later the Virginia Supreme Court, in Troy v. Walker, 218 Va. 739 (1978), distinguished Button v. Day. In doing so, however, it did not overrule Button nor indicate that constitutional revisions had vitiated it. At page 748 of the Troy decision the Court found the dominant purpose of the contractual obligation assumed by the City of Newport News was to aid the Virginia Ports Authority in operating the public's port facilities. The Court noted that the lessee thereof was in no way seeking to obtain any credit, nor was the successor lessee Nacirenia. However, and despite the public purpose so found, had the City used its credit to assist Nacirenia to obtain

credit it otherwise could not have gotten in order to become the successor lessee, the Court indicated this would have brought the case within the purview of Button v. Day. (See page 750 of the Troy case.)

It is clear, and counsel for the defendants at our January 7, 1984, conference candidly admitted that the City of Charlottesville wants to sell bonds in order to obtain funds to give to the Authority, which in turn will lend the same to Charlottesville Properties, Ltd. It is also evident that Charlottesville Properties, Ltd. cannot secure the United Virginia Bank loan without the funds it will receive indirectly from the City. Furthermore, the public funds so appropriated will be invested in privately owned facilities whose activities the defendants hope will generate the public benefits aforementioned. This brings us squarely within the 1968 Button v. Day admonition that although a laudable public purpose may lie behind an ordinance, it is constitutionally infirm if the method of accomplishment of the purpose is improper, i.e., the intent of the ordinance being to grant indirectly the credit of the City of Charlottesville to a private interest which could not itself obtain credit. I conclude, therefore, that although the City has acted within the scope of applicable statutes, the result thereof is constitutionally impermissible. The October 27, 1983 bond ordinance and the appropriation resolution of that date and as subsequently amended are therefore declared invalid.

As for Count II of the amended motion for judgment, I will address it also, so that on appeal the entire case can be before the Supreme Court. Charlottesville's Charter authorizes it to incur bonded indebtedness, and where in conflict with the provisions of the Public Finance Act, per Code § 15.1-171, the Charter prevails. The requirements of §§ 15.1-175(j) and 15.1-210 therefore do not control. The City can pay its general obligation bonds out of its general revenue funds including those derived from the meals and lodging taxes. The fact that the City in its ordinances authorizing the issuance of bonds noted it was doing so under the provisions of the Public Finance

Act is inconsequential. The City is not stripped of its Charter powers by the failure to mention the same. The Charter and said Act must be read together. The relief sought under Count II is denied. Although not necessary to this holding, for appeal purposes I reiterate my prior ruling that the motives of the individual members of City Council in enacting the meals and lodging tax ordinances are irrelevant to a consideration of their validity.